UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DONG HUI CHEN,
 on his own behalf and on behalf of other similarly situated

                                              Plaintiff,

        -against-

THAI GREENLEAF RESTAURANT CORP
  d/b/a Thai Green Leaf; and
THAI GREEN LEAF INC
  d/b/a Thai Green Leaf;
XIAOGUANG LIN
       a/k/a Xiao Guang Lin;
XIAOKAI LIN
       a/k/a Xiao Kai Lin;
HENGKENG LIN
       a/k/a Heng Keng Lin;
       a/k/a Kenny Lin;
YIMEI LIN
       a/k/a Yi Mei Lin;
WEN CHEN
       a/k/a Chen Wen;
DAN WEN,
XIURONG ZHANG
       a/k/a Xiu Rong Zhang,

                                Defendants.
------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
21-CV-01382 (MKB)(JMW)

**A P P E A R A N C E S:**

Aaron Schweitzer
**Troy Law, PLLC**
41-25 Kissena Boulevard, Suite 110
Flushing, NY 11355
*Attorney for Plaintiff*

Michael B. Mirotznik
**Mirotznik & Associates, LLC**
2115 Hempstead Turnkpike
East Meadow, NY 11554
*Attorney for Defendants*

1

**WICKS,** Magistrate Judge:

This wage and hour action arises out of Plaintiff's claim that Defendants failed to pay him and other employees minimum wage, overtime pay, and failed to provide required notices in violation of the Fair Labor Standards Act, ("FLSA") 29 U.S.C. § 201 *et seq*. and New York Labor Law ("NYLL"). As relevant here, in the infancy stage of the case, a nascent yet fundamental factual dispute was discovered: *did Plaintiff actually ever work for Defendants?*

This unanswered question prompted the Court to proceed with limited discovery which culminated with an evidentiary hearing on the discrete threshold issue of whether Plaintiff was at any point employed by Defendants. On the second day of the evidentiary hearing, Plaintiff's counsel effectively pulled the plug, withdrawing Plaintiff's consent from participating in the hearing at all. The hearing was terminated and Defendants filed the instant motion for sanctions and costs against Plaintiff and Plaintiff's counsel, Aaron Schweitzer of Troy Law, PLLC ("Troy Law"). (DE 33.) On August 8, 2022, the Honorable Chief Judge Margo K. Brodie referred Defendants' motion to the undersigned for a report and recommendation.

For the reasons set forth below, the undersigned respectfully recommends that Defendants' motion be GRANTED and sanctions be imposed.

##  I.    BACKGROUND

According to the Complaint, Defendants own and operate Thai restaurants in East Northport and Copiague. (*See* DE 1.) Plaintiff alleges that he was employed to work the fry wok from April 5, 2020, through December 27, 2020. (*Id.* at ¶ 51.) He alleges that Defendants failed to pay him and other employees minimum wage, overtime pay, and failed to provide required notices as required by the FLSA and NYLL. (*Id.* at ¶ 43-44.)

An initial conference was held on August 5, 2021.  (DE 22.)  At that conference, counsel for Defendants took the position that he had been advised by Defendants, that in fact Plaintiff never worked at their restaurant.  Plaintiffs' counsel, unsurprisingly, disagreed.   In light of this fundamental factual dispute, the Court ordered limited and focused discovery, directing Plaintiff to "produce to Defendants . . . all documentation, evidence or other proof supporting Plaintiff's allegations that Plaintiff worked at the Defendant restaurant."  (*Id.*)

The Court then held a status conference on September 8, 2021, where the parties reported that the question of whether Plaintiff ever worked for Defendants remained an open one; the limited discovery completed to date shed no light to resolve this threshold issue.  (DE 24.)  The parties agreed to engage in further limited discovery on the issue, including document disclosures and depositions.  (*Id.*)  Then, at a November 22, 2021 status conference, the parties again reported to the Court that the limited discovery proved unfruitful and that the issue of Plaintiffs' employment with Defendants persisted.  (DE 25.)  Mindful of similar cases where an issue was raised by the defense in FLSA actions claiming plaintiff had no connection with the Defendant employer, the Court proposed that a limited evidentiary hearing take place to determine this threshold issue.  (*Id.*)  Indeed, this issue has been unearthed, addressed, and resolved at all stages of litigations, including at the default judgment stage, the conditional collective action certification stage, and the summary judgment stage.  For example:

- *Lin v. Quality Woods*, 17-CV-3043-DLI-SJB, 2021 WL 4129151 (E.D.N.Y. Aug. 10, 2021) (default judgment)

- *Zhang v. Sabrina USA Inc.*, 18-CV-12332 (AJN) (OTW), 2019 WL 6724351 (E.D.N.Y. Dec. 10, 2019) (conditional collective action certification)

- *Camera v. Kenner*, 16-cv-7078 (JGK), 2018 WL 1596195 (S.D.N.Y. Mar. 29, 2018) (summary judgment)

- *Rodriguez v. 4 Caminos Mexican Rest. Corp.*, 20-CV-02975 (KAM)(JRC) (E.D.N.Y. Jan. 13, 2022) (condition collective certification).

As a result, at the Court's suggestion and the parties' consent, a limited framed issue hearing to determine the issue of whether Plaintiff in fact worked for Defendants was scheduled. (DE 26.)

On January 13, 2022,[1] the evidentiary hearing was held ("January 13 Hearing"). (DE 30.) The parties' arguments were heard, witnesses for the Plaintiff testified, and exhibits were entered into evidence. (*Id.*) Day one of the hearing was mostly consumed with the direct examination of Plaintiff. (*See* DE 33-1.) And so, a continued hearing was scheduled for March 7, 2022. (DE 30; 33-1.)[2]

At the outset of the continued hearing ("March 7 Hearing"), the Court confirmed again the purpose of the evidentiary hearing. (*See* DE 33-2.) After some back and forth on the record and a brief recess to review the January 13 Hearing transcript, Plaintiff's counsel withdrew his consent to proceed with the evidentiary hearing altogether, stating he "was never on board from the start." (*See* DE 31; DE 33; 33-2 at 120:7-8.) The hearing was terminated and the Court advised the parties that it would as a result consider an application for costs by Defendants. A briefing schedule was then set. (DE 31.)

On April 22, 2022, Defendants filed a fully briefed motion for sanctions and costs against Plaintiff and Mr. Schweitzer pursuant to 28 U.S.C. 1927 and the Court's inherent powers. (DE 33.) Plaintiff filed opposition. (DE 33-4.)

---

[1] There are some references to this hearing occurring on "January 11" not "January 13." However, according to the Court's docket and minute entry, the hearing took place on January 13, 2021. (DE 30.)

[2] On January 6, 2022, Plaintiff submitted to the Court an exhibit and witness list in anticipation for upcoming evidentiary hearing. (DE 27-28.) According to Defendants, on Saturday, March 5, 2022, Plaintiff exchanged an additional hearing material via email. (DE 33.)

4

On June 28, 2022, the Court held a motion hearing on Plaintiff's motion to amend[3] and Defendants' motion for sanctions. (DE 38.) The Court heard argument by both parties and reserved decision. (*Id.*)

## II. LEGAL STANDARD

Section 1927 provides that an "attorney. . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions under either section 1927 or the court's inherent authority have the same requirements:

> [T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is…that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.[4]

*Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).

"Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." (*Id.*)

Before imposing sanctions under the court's inherent authority, the court must find clear evidence that "(1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 633 (S.D.N.Y. 2016), *aff'd*, 683

---

[3] On December 13, 2022, the undersigned issued a Report and Recommendation to Judge Brodie concerning Plaintiff's motion to amend. (DE 49.) The fourteen-day period for the parties to assert objections to the Report and Recommendation has not yet closed. (*See id.*)

[4] An exception to the rule that section 1927 expressly applies to attorneys is where the *pro se* litigant is a lawyer. *Appel v. Hayut*, 20 Civ. 6265 (JPC), 2022 WL 214450, at *6 (S.D.N.Y. Jan. 25, 2022) (citing *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 633 (S.D.N.Y 2016)).

5

Fed. App'x 33 (2d Cir. 2017) (citation omitted); *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). With regard to the first requirement, conduct is meritless or without color when "it lacks any legal or factual basis" and is colorable when "it has some legal and factual support, considered in light of the reasonable beliefs of the attorney whose conduct is at issue." *Doe 1 v. E. Side Club, LLC.*, 18 Civ. 11324 (KPF), 2021 WL 2709346, at *20 (S.D.N.Y. July 1, 2021), *reconsideration denied sub nom.*, *Doe 1 v. E. Side Club, LLC*, 18 Civ. 11324 (KPF), 2021 WL 4711249 (S.D.N.Y. Oct. 8, 2021) (citation omitted). The second prong requires "the district court to find a clear showing of bad faith with a high degree of factual specificity in most cases." *Id.*; *see United States v. Seltzer*, 227 F.3d 36, 41-42 (2d Cir. 2000); *Oliveri*, 803 F.2d 1265, 1272.

A court need not find bad faith before imposing a sanction under its inherent power when an attorney violates a court order or engages in other misconduct that is not undertaken for the client's benefit. *United States v. Seltzer*, 227 F.3d 36, 41 (2d Cir. 2000). "Inherent power of the district court also includes the power to police the conduct of attorneys as officers of the court, and to sanction attorneys for conduct not inherent to client representation, such as, violations of court orders or other conduct which interferes with the court's power to manage its calendar and the courtroom without a finding of bad faith." *Seltzer*, 227 F.3d at 41; *George v. Pro. Disposables Int'l, Inc.*, No. 15-CV-3385 (RA), 2018 WL 2148762, at *2 (S.D.N.Y. May 1, 2018) (imposing sanctions against attorney, despite finding no bad faith, based on the "unacceptable nature of [attorney's] behavior" leading up to and during trial).

6

### III.   DISCUSSION

**A. Applicability of Sanctions**

Defendants assert that sanctions are warranted because Mr. Schweitzer knowingly and unreasonably multiplied the proceedings causing Plaintiff to incur excess costs, expenses, and attorneys' fees. (DE 33.) Defendants argue that Mr. Schweitzer's withdrawal of consent to proceed with the continued hearing was without merit, served no legitimate or legal purpose, and lacked putative benefit for Plaintiff as Mr. Schweitzer's client. (*Id.*) It is Defendants' position that Mr. Schweitzer unequivocally indicated his agreement to proceed with the limited evidentiary hearing. (*Id.*) In support, Defendants point the Court to the following dialogue from the January 13 Hearing:

> THE COURT: So the purpose of the hearing is to determine whether they worked for the defendants, correct, Mr. Schweitzer?
>
> MR. SCHWEITZER: Yes, your Honor.
>
> THE COURT: I just want to make sure that as we go forward in this hearing I do intend to allow the parties opportunity to submit the proposed findings following the hearing. You don't have to but I'll give you the opportunity to do that. From there I will report to Judge Brodie in a report and recommendation on my finding on that threshold issue. Is that agreed, Mr. Schweitzer?
>
> MR. SCHWEITZER: Yes, your honor.

(DE 33-1 at 4:8-22.) Defendants argue that Mr. Schweitzer's bad faith conduct caused Defendants to incur significant costs in preparing for and participating in the unfinished evidentiary hearings in the amount of $9,941.32. (DE 33-3.)

In opposition, Plaintiff asserts sanctions are not warranted because Defendants have not shown multiplication of proceedings, lack of colorable basis, or bad faith by Plaintiff's counsel.

7

(DE 33-4.)[5]  Plaintiff argues that the both the Court and Defendants' counsel were aware that Plaintiff intended on proceeding with discovery from the filing of the proposed case management plan and that Plaintiff intended on filing a motion for conditional collective certification.  (*Id.* at 3.)  Plaintiff contends that Plaintiff's intentions were further known because the Court and Defendants' counsel knew of a related Workers Compensation Hearing.  (*Id.* at 4.)  Plaintiff argues that the Court's instructions and orders were such that he felt Plaintiffs had "no choice" but to proceed with the evidentiary hearing.  (*Id.* at 3.)  It was only at the March 7 Hearing did Plaintiffs' counsel believe he was able withdraw his consent to proceed with discovery.  (*Id.* at 4.)  Plaintiff argues that counsel's actions to not surmount to bad faith actions but rather, it was Defendant who acted in bad faith by wanting to conduct limited discovery and the evidentiary hearing, causing additional proceedings and costs.[6]  (*Id.*)

Defendants point out in reply that the record demonstrates a clear agreement by both sides to hold an evidentiary hearing on the threshold employment issue.  (DE 33-5.)  As it relates to the party responsible for multiplying the proceedings, Defendants assert that it was Defendants who wanted to *minimize* proceedings by engaging in the evidentiary hearing but because of Mr. Schweitzer's actions the proceedings were in fact multiplied.  (*Id.*)

---

[5] The Court recognizes, as Defendants point out on reply, that Plaintiff's opposition exceeds the three-page limit set out by Rule 3(A) of the undersigned's Individual Practice Rules.  However, in light of the circumstances here and the lack of prejudice to Defendants, the Court considers the entirety of Plaintiff's opposition.

[6] During oral argument Mr. Schweitzer argued, without citation, that in order to find that he or Plaintiff unreasonably and vexatiously multiplied proceedings under 28 U.S.C. § 1927, Plaintiff needed to have been the one to request the evidentiary hearing. (Transcript of Oral Argument ["Tr."], dated June 28, 2022, at 6:10-25; 7:1-15.)  This is not the case.  "The purpose of the statute is 'to deter unnecessary delays in litigation'" (*Izzo v. ING Life Ins. & Annuity Co.*, 235 F.R.D. 177, 189 (E.D.N.Y. 2005) (citing H.R.Rep. No. 96–1234, at 8, *as reprinted in* 1980 U.S.C.C.A.N. 2716, 1782) in whichever manner delay is accomplished.  For example, this District has found sanctions appropriate where defendant caused delay and multiplied proceedings by evading providing complete discovery responses and thwarting private settlement.  *Id.*

8

Here, as a preliminary matter, the Court was well within its authority to hold a limited evidentiary hearing to determine the threshold issue of whether Plaintiff was employed by Defendants. *See e.g. Lin*, 2021 WL 4129151; *Zhang*, 2019 WL 6724351; *Camera*, 2018 WL 1596195; *Rodriguez*, 20-CV-02975 (KAM)(JRC) (E.D.N.Y. Jan. 13, 2022).

Next, from the time the idea of a limited evidentiary hearing was proposed at the November 22, 2021 status conference, up and until the second day of the hearing, Mr. Schweitzer consented to an evidentiary hearing without objection. And he wasn't without the opportunity to do so.

At the November 22, 2021 conference Mr. Schweitzer was asked if he agreed that a limited issue hearing has to take place to resolve the issue of whether Plaintiff worked for the defendants, to which he responded that the issue could be "resolved on briefing" but he nonetheless agreed that whether the issue be sorted by briefing or through a hearing was up to the Court. (DE 25; Nov. 22, 2021 Conference Recording at 1:15-1:40.) Mr. Schweitzer stated no objection to either option.

During a subsequent telephone conference on November 24, 2021, Mr. Schweitzer came before the Court again and did not voice any hesitation about proceeding with an evidentiary hearing and instead went forward with scheduling the hearing. (DE 26; Nov. 24, 2021 Conference Recording at 00:26-00:56.)

Over a month later, now arguably having substantial time to reflect on the scheduling of the evidentiary hearing, Mr. Schweitzer did not contact the Court or his adversary with any concerns or objections about the evidentiary hearing but instead submitted exhibit and witness lists. (DE 27-28.)

9

On January 13, 2022, Schweitzer appeared before the Court with witnesses, evidentiary exhibits, and a translator, ready to proceed with the hearing. Before commencing the proceedings, Mr. Schweitzer again explicitly agreed that the purpose of the hearing was determine whether Plaintiff worked for the Defendants and that at the conclusion of the hearing the parties will submit proposed findings and the undersigned would make a report and recommendation to Chief Judge Brodie on the findings. (DE 33-1 at 4:7-22.) Mr. Schweitzer then put on witnesses and submitted evidence. (*See* DE 33-1.)

It wasn't until nearly two months later, at the continued hearing, that Mr. Schweitzer first voice his purported long-standing concerns and objections to holding the evidentiary hearing. (*See* DE 33-2.) When asked what he understood to be the purpose of the hearing, Mr. Schweitzer again confirmed that he "thought we would be making a record of the evidence showing the plaintiff worked at the defendant's restaurants" and that "then Judge Brody would make a decision." (*Id.* at 118:12-25; 119:1.) Surprised by Mr. Schweitzer's sudden about-face, the Court again inquired whether Schweitzer "agreed that we would conduct the hearing for purposes of determining a threshold issue of whether or not your clients worked for defendant, correct?" (*Id.* at 119:2-5.) Mr. Schweitzer responded, "[t]hat was what – that was my impression at the time, Your Honor." (*Id.* at 119: 6-7.) Mr. Schweitzer later went on to say that he simply did not believe that the proper steps were taken for the undersigned to hold an evidentiary hearing and that him just giving consent "on the record is not sufficient." (*Id.* at 119:9-11.) When the Court expressed that it was misled by Schweitzer's prior representations, Schweitzer stated, "I apologize. I was mistaken myself. I just checked this over." (*Id.* at 119: 18-24.)

10

Mr. Schweitzer has failed to articulate any colorable basis for his withdrawal of consent or provide a reason as to why he failed to raise an objection to the evidentiary hearing at any point before the commencement of the *second day* of the hearing. The record here, including Mr. Schweitzer's remarks made on the record at the numerous status conferences, the January 13 Hearing, the March 7 Hearing, opposition to this motion, or at oral argument, is devoid of any evidence suggesting that these actions were undertaken for the benefit of Mr. Schweitzer's current client. To that end, to the extent Defendants seek sanctions against Plaintiff, Defendants do not identify, nor does the record reflect, any misconduct by Plaintiff. And so, any award of sanctions here should be directed solely at Mr. Schweitzer. *See Ransmeier v. Mariani*, 718 F.3d 64, 71 (2d Cir. 2013) ("For purposes of determining whether to impose sanctions, we analyze the conduct of parties and their attorneys separately.") Indeed, the Second Circuit has held that "[t]he rule that the sins of the lawyer are visited on the client does not apply in the context of sanctions, and we therefore must specify conduct of the client herself that is bad enough to subject her to sanctions." *Id.* (internal quotes omitted). Here, there is no evidence that Plaintiff participated in such sanctionable conduct.

On the other hand, the Court is unable to glean from the record any plausible legal reason or intention of serving his client behind Mr. Schweitzer's actions. It appears that he pursued these actions with no other purpose than to attempt to vexatiously multiply the proceedings. Accordingly, it is respectfully recommended that sanctions be imposed on Mr. Schweitzer under the Court's inherent powers "to police the conduct of attorneys as officers of the court, and to sanction attorneys for conduct not inherent to client representation." *See Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*, No. 17-CV-00840 (VSB), 2021 WL 2414872, at *4

(S.D.N.Y. June 11, 2021) (sanctioning Troy Law under the Court's inherent power for vexatiously multiplying proceedings).[7]

## B. Amount of Sanctions

Defendants seek monetary sanctions in the amount of $9,941.32, as the amount needed to compensate Defendants fees and costs incurred in preparing for and carrying out the two days of evidentiary hearings. (DE 33 at 3.) Defense counsel submits contemporaneous billing records reflecting attorney billing rates, description of services, the hours worked, and any additional costs incurred in connection with Defendants' participation in the evidentiary hearing. (DE 33-3.) Counsel also submits a corresponding curriculum vitae to substantiate his experience and billing rate. (*Id.*) Mr. Schweitzer does not contest the sum sought by defense counsel.

The determination of form and amount of sanctions lies squarely within the Court's discretion. *Bao Guo Zhang*, 2021 WL 2414872, at *4. "With that being said, [a] party who

---

[7] Mr. Schweitzer and his firm are no strangers to sanctions such as the ones sought here. Indeed, as time goes by the volume of decisions, briefs, and letter motions compiling a history of Troy Law and its attorneys' misconduct, steadily increases. *See e.g.*, *Ke v. J R Sushi 2 Inc.*, No. 19CV7332PAEBCM, 2022 WL 1496576, at *15 (S.D.N.Y. Feb. 7, 2022), *report and recommendation adopted*, No. 19CIV7332PAEBCM, 2022 WL 912231 (S.D.N.Y. Mar. 28, 2022) (awarding a civil non-monetary sanction against Troy Law); *Panora v. Deenora Corp*, 521 F. Supp. 3d 177, 180 (E.D.N.Y. 2021) (imposing monetary sanctions against Troy Law); *Jianjun Chen v. WMK 89th St. LLC*, No. 1:16-CV-5735-GHW, 2020 WL 2571010, at *10 (S.D.N.Y. May 20, 2020) (imposing monetary sanctions against Troy Law); *Guangqing Lin v. Teng Fei Rest. Grp. Inc.*, No. 17CV1774 (DF), 2020 WL 264407, at *5 (S.D.N.Y. Jan. 17, 2020), *reconsideration denied*, No. 17CV1774 (DF), 2020 WL 429128 (S.D.N.Y. Jan. 27, 2020) (ordering Troy Law and Mr. Schweitzer each pay a civil monetary sanction); *Chun Lan Guan v. Long Island Bus. Inst., Inc.*, No. 15CV2215CBAVMS, 2019 WL 3807455, at *3 (E.D.N.Y. Aug. 13, 2019) (affirming recommendation of monetary sanctions against Troy Law); *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, 331 F.R.D. 568, 575 (S.D.N.Y. 2019) (imposing sanctions on John Troy, principal of Troy Law); *Jianshe Guo v. A Canaan Sushi Inc.*, No. 18-CV-4147 (JMF), 2019 WL 1507900, at *5 (S.D.N.Y. Apr. 5, 2019) (imposing monetary sanctions against John Troy and Mr. Schweitzer). The round-up of sanctions decisions about Mr. Schweitzer and his firm are exponential.

incurs expense by virtue of an attorney's violation may be reimbursed only for the 'excess costs' incurred as a result of the violation, not for the ordinary costs of litigation." *Id.* (citing *Novelty Textile Mills, Inc. v. Stern*, 136 F.R.D. 63, 76 (S.D.N.Y. 1991)) (internal quotes omitted); *Gortat v. Capala Bros., Inc.*, No. 07 CV 3629 (ILG), 2009 WL 10706564, at *15 (E.D.N.Y. June 3, 2009) ("This Court may only award fees and expenses attributable to the offensive conduct"). "The starting point for determining this amount is the fees and expenses that were reasonably and necessarily incurred in connection with the sanctionable conduct, and the burden to establish this lies with the moving party." *In re Khan*, 488 B.R. 515, 536 (Bankr. E.D.N.Y. 2013), *aff'd sub nom. Dahiya v. Kramer*, No. 13-CV-3079 DLI, 2014 WL 1278131 (E.D.N.Y. Mar. 27, 2014), *aff'd sub nom. In re Khan*, 593 F. App'x 83 (2d Cir. 2015).

The records submitted by defense counsel show that Michael B. Mirotznik, the principal partner of Mirotznik & Associates, LLC, billed 18.6 hours preparing for and attending the evidentiary hearings before the undersigned at a rate of $450 per hour. (DE 33-3.) This includes time for meeting with his client, conferences before the undersigned to schedule the evidentiary hearing, and review of the case file, exhibits and transcript for the second day of the hearing. (*Id.*) Mr. Mirotznik also includes costs for Defendants' purchase of the transcript of both the January 13 Hearing ($413.58) and the March 7 Hearing ($192.24)—both of which were submitted in support of the instant motion—and the costs for the use of an interpreter in the preparation of and during the January 13 Hearing (totaling $988.00). (*Id.*)

The Court finds Mr. Mirotznik's billing rates reasonable and well within the rates approved within this District. *See e.g.*, *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 103 (E.D.N.Y. 2020) (noting that "Courts in this District have approved the following hourly rates for attorneys practicing in the Eastern District of New York: $300 to $450 for partners in

13

law firms, $200 to $325 for senior associates, and $100 to $200 for junior associates," and collecting cases). Further, the Court finds that costs expended in connection with purchasing the hearing transcripts and use of the translator were incidental and necessary to represent Defendants in connection with the evidentiary hearing. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients") (internal quotation marks omitted).

Is clear that Defendants would not have incurred the costs reflected in defense counsel's invoice but for Mr. Schweitzer's misleading representations to the Court that Plaintiff consented to proceed with an evidentiary hearing only to abruptly withdraw his consent on the second day of the proceedings. Without Mr. Schweitzer's misconduct, the matter would have proceeded with discovery and Defendants would not have incurred the costs and fees associated with the preparation of and carrying out of an evidentiary hearing. Therefore, it is respectfully recommended that Mr. Schweitzer be sanctioned in the amount of $9,941.32. *See Bao Guo Zhang*, 2021 WL 2414872, at *5 (awarding "100% of the reasonable fees and costs incurred as a result of Troy Law's dilatory objections to the settlements"); *Jianjun Chen v. 2425 Broadway Chao Rest.*, LLC, 331 F.R.D. 568, 575 (S.D.N.Y. 2019) (awarding defendants 100% of the reasonable fees and costs associated with their motion for sanctions, amounting to $49,920.00 against Troy Law)).

## IV. CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that Defendants' motion for sanctions be GRANTED.

14

**OBJECTIONS**

A copy of this Report and Recommendation is being electronically served on counsel for all of the parties.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision") (citation omitted); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
       December 22, 2022

                                    RESPECTFULLY RECOMMENDED,

                                    /s/ *James M. Wicks*
                                       JAMES M. WICKS
                                    United States Magistrate Judge