UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DONG HUI CHEN,

                Plaintiff,

                                          **MEMORANDUM**
                                          <u>**AND ORDER**</u>

          -against-

                                          21-CV-01382 (MKB) (JMW)

THAI GREENLEAF RESTAURANT CORP. *et al.*,

                Defendants.
------------------------------------------------------------------X

**A P P E A R A N C E S:**

      Aaron Schweitzer, Esq.
      John Troy, Esq.
      **Troy Law, PLLC**
      41-25 Kissena Boulevard, Suite 110
      Flushing, NY 11355
      *Attorney for Plaintiffs Dong Hui Chen and Xiaoyan Zhong*

      **John Peter Stebe**
      26 Court Street, Suite 1507
      Brooklyn, NY 11242
      *Attorney for Defendants and Cross-Defendants Thai Greenleaf Restaurant Corp and*
      *Yimei Lin*

      Stephen Frank Doddato, Esq.
      **Mirotznik & Associates, LLC**
      2115 Hempstead Turnpike
      East Meadow, NY 11554
      *Attorney for Defendants and Cross-Defendants Thai Greenleaf Restaurant Corp, Yimei*
      *Lin, and Wen Chen*

      **Ripal J. Gajjar, Esq.**
      420 Lexington Avenue, Suite 1402
      New York, NY 10170
      *Attorney for Defendants and Cross Claimant Greenleaf Restaurant, Inc. and Feng Zhu*
      *Chen*

      *No appearance for Defendants Xiaoguang Lin, Xiaokai Lin, Hengkeng Lin, and Dan Wen*

**WICKS,** Magistrate Judge:

Plaintiffs, Dong Hui Chen and Xiaoyan Zhong, commenced this action against several Defendants[1] alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL"), § 650 *et seq,* and 12 New York Codes, Rules and Regulations § 146 (NYCRR)*.*  Specifically, Plaintiffs allege that Defendants have failed to pay their employees minimum and overtime wages and spread of hours under the FLSA and NYLL.  (ECF No. 51 at 2.)  They further allege they are entitled to damages related to Defendants' failure to provide wage notices at the time of hire and wage statements throughout their employment.  (*Id.* at 2-3.)

Before the Court is Plaintiffs' motion for conditional certification of the FLSA collective (ECF No. 71.)  The motion is unopposed.  For the reasons stated below, the motion is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

Plaintiff Dong Hui Chen was employed as a fry wok chef at Defendants' restaurant from April 5, 2020 through December 27, 2020.  (ECF No. 51 ¶ 8.)  Plaintiff Xiaoyan Zhong was employed as an oil wok chef from December 22, 2020 through December 28, 2020.  (*Id.* ¶ 9.) Individual Defendants Xiaoguang Lin, Xiaokai Lin, Hengkeng Lin, Yimei Lin, Wen Chen, and Dan Wen are all alleged to have taken part in Plaintiffs' hiring and termination and the scheduling and payments.  (*Id.* ¶¶ 13, 15, 17-18, 22, 24, 26-27, 30, 35, 37.)[2]

---

[1] Defendants include Thai Greenleaf Restaurant Corp., Xiaoguang Lin, Xiaokai Lin, Hengkeng Lin, Yimei Lin, Wen Chen, Dan Wen, Greenleaf Restaurant, Inc., and Feng Zhu Chen.

[2] There are also issues of successor liability at issue since Plaintiffs also allege that Greenleaf Restaurant Inc. purchased Thai Green Leaf from Thai Greenleaf Restaurant Corp. throughout this litigation. (ECF No. 51 ¶ 39.)

Plaintiffs allege that "[t]here are at least 5 employees at the restaurant, including one other fry wok, one oil wok, two delivery people and one cashier." (*Id.* ¶ 48.)  Plaintiffs contend that Defendants failed to pay Plaintiffs their regular and overtime wages for hours worked over 40 in each work week. (*Id.* ¶ 51.)  They state that Defendants failed to maintain accurate records of Plaintiffs' wages and did not provide them with a Time of Hire Notice which would have informed them of their respective pay rates and paydays. (*Id.* ¶ 55.)  Further, Defendants failed to pay Plaintiffs their required "spread of hours" premium pay for each day Plaintiffs worked over ten hours. (*Id.* ¶ 56.)

Plaintiff Dong Hui Chen worked between 43 to 75 hours each week. (*Id.* ¶¶ 60-62.)  He alleges he was not given a proper break and was not paid for his overtime wages, never informed of his hourly pay rate or tip deductions toward his minimum wages, and was never given a paystub with his statement. (*Id.* ¶¶ 55, 69-70, 72.)  Similarly, Plaintiff Xiaoyan Zhong was not given a written notice at the time of hire, was never informed of her hourly pay rate, and not paid her appropriate overtime wages. (*Id.* ¶¶ 76, 82-83.)  Throughout her employment, Plaintiff worked approximately 65 to 74.5 hours a week. (*Id.* ¶¶ 77-78.)  Further, she alleges she was not compensated appropriately for the spread of hours premium for shifts longer than 10 hours. (*Id.* ¶ 86.)

As to the collective action allegations, Plaintiffs bring this action

individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case…and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week.

(*Id.* ¶ 87.)[3]

---

[3] Plaintiffs also raise class action allegations (ECF No. 51 at 15-19) but this motion only requests certification of the FLSA collective. (*See* ECF No. 71.)

## PROCEDURAL BACKGROUND

Plaintiffs first commenced this action on March 16, 2021.  (ECF No. 1.)  Plaintiffs had originally filed the motion to certify the FLSA collective on August 3, 2022.  (ECF No. 39.) Defendants opposed, citing the following two main issues: "(1) whether notice should be disseminated by posting in the subject restaurant in addition to the other methods set forth in the stipulation (direct mail, email, text message); and (2) whether the statute of limitations should be tolled for opt-ins."  (ECF No. 47.)  Specifically, Defendants state that they sold the restaurant in December 2021 and no longer have control over the premises and that there would be no need to post the notice in the workplace given that all current employees would receive the notice via mail, e-mail, etc.  (*Id.*)  As to the tolling, Defendants state that Plaintiffs have "failed to allege any exceptional circumstances that would justify tolling the limitations period."  (*Id.* at 2.)

The undersigned, however, denied the motion with leave to renew given that Plaintiffs sought to amend the Complaint and add Greenleaf Restaurant, Inc. and Feng Zhu Chen as successors to Thai Greenleaf Restaurant Corp which would impact the Court's determination of the appropriate methods of notice in this case.  (Electronic Order dated Feb. 23, 2023.)  Notably, the undersigned stated in the same order, "Since the parties have stipulated to most of the relief sought in the motion, *any renewed motion should be limited to any relief to which the parties cannot not agree*."  (*Id.*) (emphasis added.)

Shortly after, the Chief Judge Margo K. Brodie adopted the undersigned's Report & Recommendation regarding Plaintiffs' motion to amend. (ECF No. 66.)  Plaintiffs were thus granted leave to add Xiaoyan Zhang as a Plaintiff, remove Defendants Thai Green Leaf, Inc. and Xiurong Zhang, assert FLSA and NYLL claims against Greenleaf and Feng Zhu Chen as successor Defendants, and remove irrelevant causes of action.  (*Id.*)

4

Following Chief Judge Brodie's Order, the Court held a pre-motion conference with the parties.  (ECF No. 69.)  The parties expressed that there were outstanding issues concerning certification, but the Court directed them to meet and confer on these issues.  (*Id.*)  If they could not come to an agreement, they were to submit briefing on the issues by November 17, 2023. (*Id.*)  Plaintiffs submitted their renewed motion for conditional certification of the collective (ECF No. 71) and reply (ECF No. 76) in a timely manner.  Defendants stated in an email to Plaintiffs that they will not be opposing the motion for collective certification.  (ECF No. 76-1.)

In their memorandum of law, Plaintiffs *first* allege that similarly situated employees must be afforded notice as soon as possible and be allowed the chance to opt-in given that the applicable statute of limitations will continue to run against them.  (ECF No. 73 at 11.)  *Second,* Plaintiffs aver that they "exceed the low burden for Conditional Certification of all non-managerial employees of Defendants" given that there was a common policy or plan that violated the FLSA.  (*Id.* at 17.)  *Third*, Plaintiffs contend that the Court should direct Defendants to furnish Plaintiffs with an Excel sheet with personal information[4] of all non-managerial employees who worked from March 16, 2018 to present day within 14 days of the Order.  (*Id.* at 20.)  *Fourth*, Plaintiffs request that the Court authorize a notice to potential opt-in plaintiffs of their opportunity to join the lawsuit.  (*Id.* at 21.)  *Fifth*, Plaintiffs asks the Court to authorize (1) the dissemination of the Notice to potential opt-in plaintiffs in any relevant language via mail, email text message or social media within twenty (21) days of receiving the aforementioned Excel sheet; (2) the sending of the Notice to potential members through text or email using the information provided by Defendants' Excel sheet; (3) the use of two QR codes to be mailed to

---

[4] Personal information including first and last name, last known address with apartment number (if applicable), the last known telephone numbers, last known e-mail addresses, WhatsApp, WeChat ID and/or FaceBook usernames (if applicable), and work location, dates of employment and job position.

potential members linked to Plaintiffs' Counsel's sign-up website; (4) the use of Defendants' logo on the Notice to potential class members; (5) the publication of the full opt-in Notice on Plaintiffs' Counsel's website; (6) the posting of the Notice in conspicuous locations in Defendants' restaurants; (7) the exclusion of Defendants' attorney information on the Notice; (8) the setting of the opt-in anchor date from the Complaint filing date; (9) the ordering of a 90-day opt-in period; (10) the granting of a three-year statute of limitations for the Notice period; and (11) the permission to send all notices be in Chinese or Spanish. (*Id.* at 21-30.) *Sixth*, Plaintiffs request that the Court allow Plaintiffs to send a reminder mailing, text, and email halfway through the Notice period. (*Id.* at 30.) *Seventh*, Plaintiffs ask that the Court order that if Defendants fail to publish information of the collective or 20% of Notices of Pendency are returned, Plaintiffs can publish the Notice in newspapers and on social media at Defendants' expense. (*Id.*) *Finally*, Plaintiffs request that the Court toll the statute of limitations for 90 days from the date that Plaintiffs filed the Complaint through the end of the opt-in period. (*Id.* at 31.)

## THE LEGAL FRAMEWORK

### I.  Motion to Certify FLSA Collective

#### A.  Request 1: FLSA Conditional Collective Action Certification

Plaintiffs allege they were not paid their fair wages and were not given the appropriate notices and wage statements. (ECF No. 51.) The Amended Complaint provides detailed information as to the hours Plaintiffs worked and the monies they were paid and supposed to be paid. (*See generally id.*)

Section 216(b) of the FLSA provides, in relevant part:

> An action to recover ... liability ... may be maintained against any employer ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such

action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

"While FLSA does not prescribe any procedures for approval of actions brought collectively by those who are 'similarly situated,' courts have long construed § 216(b) to grant district court authority to order that notice be given to potential plaintiffs informing them of the option to join the suit." *Id.* Approval of a collective action is a two-step process. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* All that is needed is a modest factual showing that plaintiffs and potential opt-in plaintiffs were victims of a common policy that violated the law. *Id.* Particularly, in an exemption case, plaintiffs can do this by showing there were other employees similarly situated with respect to their job requirements and pay provisions, who were classified as exempt under a common policy or scheme. *Id.* The court may consider the pleadings as well as supporting affidavits. *Chang v. Philips Bryant Park LLC,* No. 17-CV-8816 (LTS) (SLC), 2019 WL 8105999, at *12 (S.D.N.Y. Oct. 23, 2019), *report and recommendation adopted,* 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020). "If plaintiffs meet this 'fairly lenient standard,' conditional certification is typically granted and notice to potential plaintiffs authorized." *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 WL 1107711, at *4 (E.D.N.Y. Apr. 2, 2012).

The second step occurs later, on a more complete record. *Myers*, 624 F.3d at 555. Plaintiffs must show that the plaintiffs who opted in are *actually similarly situated* to the named plaintiffs. *Id.* The undersigned considers conditional approval of the FLSA collective action through this lens.

7

Here, Plaintiffs have demonstrated that they are similarly situated to the members of the FLSA collective.  Indeed, there are at least five other employees that have experienced similar conditions of employment by Defendants.  Regardless, courts in this Circuit have found that even *just one* employee's declaration would be sufficient for conditional certification.  *See e.g., Morrison v. Columbus Fam. Health Care LLC,* 672 F. Supp. 3d 524, 534.  Conditional certification of collective actions is regularly granted based on employee affidavits which state "an employer's failure to pay minimum wage or overtime and identifying similarly situated employees by name." *Rosario v. Valentine Ave. Discount Store, Co.,* 828 F. Supp. 2d 508, 515 (E.D.N.Y. 2011).  Plaintiffs can clear the lower conditional certification threshold even if they rely exclusively upon their own affidavit in support of certification which therein "relies heavily upon [the plaintiffs'] own experiences and observations." *See Ramirez v. Liberty One Grp. LLC*, 22 Civ. 5892 (KPF), 2023 U.S. Dist. LEXIS 121174, at *21-23 (S.D.N.Y. July 14, 2023).

Here, Plaintiffs Dong Hui Chen and Xiao Yan Zhong have each provided detailed affidavits describing the hours they worked, their pay information, and their lack of overtime and spread of hours payments.  (ECF Nos. 72-9 and 72-10); *see Placinta v. Grazina Pilka, Inc*., No. 16-CV-4272-KAM-SJB, 2018 U.S. Dist. LEXIS 179222, at *21-22 (E.D.N.Y. Sept. 21, 2018) (finding two plaintiff's testimonies and statements to be sufficient to warrant conditional certification).  They have also outlined the experiences of seven potential co-workers which demonstrate Defendants' alleged practice of failure to pay their employees' appropriate wages.  (ECF Nos. 72-9 and 72-10.)

These potential Plaintiffs are also similarly situated despite their holding different positions.  Courts have held that even despite different titles, Plaintiffs are still similarly

situated for collective action purposes.  *Islam v. LX Ave. Bagels, Inc.,* 18 Civ. 04895 (RA)

(RWL), 2019 U.S. Dist. LEXIS 173744, at *7-8 (S.D.N.Y. Sept. 30, 2019).  Similarly

situated employees can include "cashiers, cooks, delivery workers, porters, dishwashers

and deliworkers employed at Defendants' stores" for the purpose of conditional

certification of an FLSA collective action.  *Id.* at *10-11.  Collective action is appropriate

as long as all prospective class members were similarly situated in that all were subject to

the same policy and there is a factual nexus among plaintiffs.  *See Stevens v. HMSHost*

*Corp.*, CV 10-3571 (ILG) (VVP), 2012 U.S. Dist. LEXIS 190689, at *21-22 (E.D.N.Y.

June 15, 2012) ("As long as [the members of the proposed collective action] were all

similarly situated with respect to being subject to the same policy of being denied

overtime compensation, and there exists a factual nexus among the plaintiffs, conditional

certification of the collective action is appropriate.") (internal citations omitted).

Therefore, the potential members' titles of cashier and packer or oil and fry wok would

be sufficient here in light of the lack of payment they too experienced, similar to the

named Plaintiffs.  (*See* ECF Nos. 72-9 and 72-10.)  The Court thus finds that Plaintiffs

have adduced sufficient evidence for conditional certification of the FLSA collective.

## B.  Request 2: Excel Spreadsheet of All Current and Former Non-Exempt and Non-Managerial Employees from March 16, 2018

Plaintiffs next request that Defendants provide Plaintiffs with an excel

spreadsheet with contact information, containing at least the employees' last known

mailing addresses, phone numbers, email addresses, social media usernames, as well as

work locations, dates of employment, and work positions, for all non-managerial

employees that worked for Defendants from March 16, 2018 through the present.  This is

not an unusual request and indeed courts in this Circuit have routinely granted such

requests in the FLSA conditional collective certification stage. *See Pandora v. Deenora Corp,* No. 19-cv-7267 (BMC), 2020 U.S. Dist. LEXIS 230967, at *11-12 (E.D.N.Y. Dec. 8, 2020) (granting plaintiff's unopposed request for defendants to produce an excel within fourteen days of the entry of the court's order containing contact information for all non-managerial employees who worked for defendants during a given time period); *see also Zhongle Chen v. Kicho Corp.,* No. 18 CV 7413 (PMH) (LMS), 2020 U.S. Dist. LEXIS 67935, *25-26 (S.D.N.Y. Apr. 17, 2020) (granting plaintiff's request that defendants be ordered to provide an excel file within 14 days of the entry of the order, but limiting it to names, addresses, telephone numbers, email addresses, dates of employment, and possible social media handles); *Jian Wu v. Sushi Nomado of Manhattan, Inc.,* No. 17cv04661 (PGG) (DF), 2019 U.S. Dist. LEXIS 127895, at *36-38 (S.D.N.Y. July 25, 2019) (granting plaintiffs' request that defendants be required to produce an excel spreadsheet or other reasonably useable formatted document containing contact information for all non-managerial employees for a certain time frame and worked in certain capacities); *Alvarez v. Schnipper Rests. LLC,* No. 16 Civ. 5779 (ER), 2017 U.S. Dist. LEXIS 204596, at *18 (S.D.N.Y. Dec. 11, 2017) (directing defendants to produce excel file within 10 days of the court's order with the names, titles, compensation rates, dates of employment, last known mailing and email addresses, and all telephone numbers for the relevant employees).  Accordingly, this request is granted and Defendants must provide the excel spreadsheet within 14 days of the Court's entry of this Order.

**C.  Request 3: Authorization That the Notice in This Matter Be Disseminated**

Plaintiffs also request that the Court authorize the issuance of a notice informing other plaintiffs of the opportunity to opt in.  (ECF No. 73 at 21.)

Where, as here, a court finds that the named Plaintiffs have satisfied their burden at the conditional certification stage, it has the "discretion to facilitate this collective action mechanism by authorizing that notice be sent to potential plaintiffs informing them of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Gonzalez v. Hanover Ventures Marketplace LLC*, 21 Civ. 1347 (ER), 2022 U.S. Dist. LEXIS 11473, at *6 (S.D.N.Y. Jan. 21, 2022) (internal citations omitted); *Hanchard-James v. Brookdale Family Care Ctrs*., 12 Civ. 1922 (BMC), 2012 U.S. Dist. LEXIS 113118, at *4 (E.D.N.Y. Aug. 9, 2012) ("The Second Circuit has held that district courts may facilitate FLSA collective actions by authorizing the distribution of notice to any potential plaintiffs to inform them of their ability to opt in to the collective action.") (citing *Myers v. Hertz Corp*., 624 F.3d 537, 554 (2d Cir. 2010)). Further, the Court's authorization of the dissemination of the notices ensures that other potential opt-in plaintiffs will receive "timely, accurate, and informative" materials.  *Islam v. LX Ave. Bagels, Inc*., 18 Civ. 04895 (RA) (RWL), 2019 U.S. Dist. LEXIS 173744, at *19 (S.D.N.Y. Sept. 30, 2019); *Bittencourt v. Ferrara Bakery & Café, Inc*., 310 F.R.D. 106, 116 (S.D.N.Y. 2015) (stating that district courts ensure that plaintiffs receive accurate and timely notices "so that they can make informed decisions about whether to participate").

Accordingly, having found that Plaintiffs met their initial burden in demonstrating that they are similarly situated to other employees, the Court exercises its discretion in authorizing Plaintiffs to issue the notice for opt-in plaintiffs.[5]

### a. Dissemination of the Notice via Mail, Email, Text Message, or Social Media Group (Request 6)

Plaintiffs next seek authorization for dissemination of a Notice of Pendency in relevant languages by regular mail, email, text messages, or social media.  (ECF No. 73 at 21.)  Courts have held that the dissemination of notices via mail, email, and text are appropriate vehicles.  *See Carranza v. VBFS, Inc.*, No. 20-cv-02635 (PAE) (KHP), 2021 U.S. Dist. LEXIS 64885, at *19 (S.D.N.Y. Apr. 2, 2021) ("[T]he Court agrees that disseminating the notice by mail, email, text message, and social media chat (addressed specifically to members of the proposed collective) is appropriate."); *Quiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 96-97 (S.D.N.Y. Mar. 19, 2020) (directing that the notice to be sent "in any relevant language via mail, email, text, or social media platform").

However, some courts have declined dissemination via social media if a plaintiff does not provide support as to why the court should deviate from the "traditional methods generally accepted by courts sitting in this Circuit."  *Li Ni v. Red Tiger Dumpling House Inc.,* No. CV 19-3269 (GRB) (AKT), 2020 U.S. Dist. LEXIS 226539, at *36-37

---

[5] It is proper for the Plaintiffs to exclude Defendants' attorney's information on the Notice of Pendency to avoid confusion or ethical conflicts.  Courts in this Circuit have consistently found the exclusion of defendant's attorney's information from Notices of Pendency to be reasonable. *See Ling Chen v. Asian Terrace Rest., Inc.,* 19-cv-7313 (BMC), 2020 U.S. Dist. LEXIS 126417, at *15 (E.D.N.Y. July 17, 2020) (finding the exclusions of the defendant's attorney's information from the Notice of Pendency to be reasonable); *Carranza v. VBFS, Inc.,* 20-cv-02635 (PAE) (KHP), 2021 U.S. Dist. LEXIS 64885, at *19 (S.D.N.Y Apr. 2, 2021) (granting the request to exclude Defendants' attorneys' information from the notice); *Singh v. Anmol Food Mart, Inc.,* No 22-CV-5475 (RER) (JAM), 2024 U.S. Dist. LEXIS 14475, at *12 (E.D.N.Y. Jan. 26, 2024) (allowing defendant's counsel's information to be excluded from the notice).

(E.D.N.Y. Nov. 30, 2020) (collecting cases in this Circuit which have allowed dissemination of notices via mail, email, and texts if the employer's business has a high turnover rate but declining to dissemination by social media since plaintiff did not provide support "to deviate from the traditional methods generally accepted by courts sitting in this Circuit"); *Chui v. Am. Yuexianggui of Li LLC,* CV 18-5091 (SJF) (AKT), 2020 U.S. Dist. LEXIS 117296, at *28-29 (E.D.N.Y. July 2, 2020) (same).

Here, Plaintiffs have stated that dissemination through social media channels are "reasonable and minimally invasive." (ECF No. 73 at 22.) Further -- in their memorandum of law -- they state and provide support demonstrating that WeChat and WhatsApp are "utilized heavily by Chinese-American immigrant workers and Hispanic-American immigrant workers"—which make up the majority of the putative collective. (*Id*. at 24.) Accordingly, the Court grants leave for dissemination of the notices via mail, email, texts, and social media *limited to WeChat,* and *WhatsApp*, to all members of the putative class within twenty-one (21) days after Plaintiffs receive the Excel spreadsheet.

### b.  Dissemination of the Notice using Quick Response Codes

Plaintiffs next request authorization for publication of Quick Response ("QR") codes to potential members which would allow Plaintiffs to directly communicate with Plaintiffs' counsel and download, sign, and submit the Notice of Pendency.

This Circuit has been hesitant to allow QR codes for fear that recipients can scan and "find themselves virtually in counsel's office." *Singh v. Anmol Food Mart, Inc.,* No 22-CV-5475 (RER) (JAM), 2024 U.S. Dist. LEXIS 14475, at *12 (E.D.N.Y. Jan. 26, 2024) (quoting *Panora v. Deenora Corp.*, 521 F. Supp. 3d 177, 180 (E.D.N.Y. 2021)). Although other Circuits have, on occasion, granted permission for plaintiffs to utilize QR codes for potential opt in plaintiffs to

sign consent forms to join electronically as long as it only links to the consent form.  *See e.g.,*
*Bennett v. BT'S on the River, LLC*, CASE NO. 1:22-CV-20772-SCOLA/DAMIAN 2023 U.S.
Dist. LEXIS 16177, *1, 23 (S.D. Fla. Jan. 31, 2023) (granting plaintiffs permission to utilize a
QR code for opt-in plaintiffs to sign their consent forms to join electronically); *Costa v. Apple,
Inc.*, Case No. 23-cv-01353-WHO 2023 U.S. Dist. LEXIS 208816, at *19 n.3 (N.D. Cal. Nov.
21, 2023) (permitting plaintiffs to include a QR code in the mail notification and reminder
postcard to potential opt-in plaintiffs as long as "it only link[ed] to an electronic version of the
consent form and nothing else").

Plaintiffs apply the same logic to the QR codes as was done with the social media
request—simply stating that dissemination via QR code is "reasonable and minimally invasive."
(ECF No. 73 at 23.)  However, unlike with the social media request, Plaintiffs fail to describe
how the use of the QR codes would be effective here and heavily utilized by the putative
members.  That is, Plaintiffs have failed to establish that under the circumstances presented a QR
code is necessary or even appropriate.  Notably, Plaintiffs have not provided any authority from
within the Second Circuit in which a QR code request was granted.  Accordingly, this request is
denied.

### c.  Use of Defendants' Logo on Notices

Plaintiffs also request using Defendants' logo on mailings to potential members.
(ECF No. 73 at 25.)  Plaintiffs cite to "fair use" factors typically applied in copyright
cases to support their assertion that they can use the logo to notify class members as an
"instantly recogniz[able]" aspect of the notice.  (*Id.* at 24-25.)

Courts "routinely deny" the use of Defendants' logo on FLSA notices as its use
runs the risk of a copyright violation and can send a message to recipients that their

current or former employer "wants or expects them to join the action." *See Singh,* 2024 U.S. Dist. LEXIS 14475 at *13.  Defendants' logos on notices have been deemed unnecessary and running the risk of "unduly inducing opt-in plaintiffs into joining" actions.  *Chengxue Sun v. New G Nails & Spa Inc.,* 22-CV-5523 (NRM) (ST), 2023 U.S. Dist. LEXIS 150449, at *26 (E.D.N.Y. Aug. 25, 2023); *Qian Wang v. Kirin Transp. Inc*., 20-CV-5410 (KAM) (TAM), 2022 U.S. Dist. LEXIS 3599, at *39-42 (E.D.N.Y. Jan. 7, 2022) (denying use of logo where it was not necessary and opt-in plaintiffs may believe the employer is requiring them to fill out the form).

Here, Plaintiffs have provided only speculative assertions that putative members would discard the notice if it does not bear Defendants' logo.  Further, Plaintiffs have failed to provide any binding case law supporting its request to use Defendants' logo on the notices and have thus not demonstrated why this Court should deviate from the cases in this Circuit denying such requests.  For these reasons, Plaintiffs' application to use Defendants' logo is denied.

### d. Request 5: Authorizing Plaintiffs to Publish the Full Opt-In Notice on Plaintiffs' Counsel's Website

Plaintiffs request that the notice be published on counsels' own website.  Such postings on counsels' website have been authorized.  *In re Deloitte & Touche Overtime Litig.*, No. 11 Civ. 2461 (RMB), 2011 U.S. Dist. LEXIS 144977, at *9-10 (S.D.N.Y. Dec. 16, 2011) (allowing the notice to potential members be posted on plaintiff's counsel's website); *Chen v. Dun Huang Corp*, 19-CV-11883 (GBD) (BCM), 2021 U.S. Dist. LEXIS 216989 (S.D.N.Y. Nov. 8, 2021) (allowing notice to potential members to be disseminated on plaintiff's counsel's website).  However, plaintiff's request to post on plaintiff's counsel's website have been denied when plaintiff did not present evidence

that collective action members were likely to visit the website.  *Yuefeng Shi v. TL & CG Inc.,* No. 19-CV-08502 (SN), 2020 U.S. Dist. LEXIS 142853, at *13-14 (S.D.N.Y. Aug. 10, 2020) (finding no reason to believe notice on the website would reach members).   As with the QR code, Plaintiffs have not stated how posting on Plaintiffs' counsel's website would be utilized and effective and thus this request is denied.  *See Zhongle Chen v. Kicho Corp*., 18 CV 7413 (PMH) (LMS), 2020 U.S. Dist. LEXIS 67935, at *28 (S.D.N.Y. Apr. 17, 2020) (denying unopposed request to post on counsel's website where plaintiff failed to show that members would visit the website and that posting on counsel's website would be any more effective than mail, text, email, or social media messages).

      e.  **Request 7: Ordering Defendants to Post the Approved Proposed Notice in Conspicuous Locations**

Plaintiffs request that the Notice of Pendency and Consent Form be posted in conspicuous locations of Defendants' restaurants that are likely to be seen by all current members of the collective that are employed there.  (ECF No. 73 at 26.)  They further request that the notice be posted throughout the opt-in period and included in the employees' pay envelopes or method of delivery of their paycheck information.  (*Id.*)

Courts in this Circuit consistently allow plaintiffs to post notices in conspicuous locations in defendant's workplaces in FLSA in this Circuit to maximize the opportunity for potential opt-in members to join the lawsuit.  *Chengxue Sun v. New G Nails & Spa Inc.,* 22-CV-5523 (NRM) (ST), 2023 U.S. Dist. LEXIS 150449, at *19 (E.D.N.Y. Aug. 25, 2023) (approving of plaintiff's request to post notice and consent forms in conspicuous non-public common area); *Rotari v. Mitoushi Sushi, Inc*., 448 F. Supp. 3d 246, 256 (E.D.N.Y 2020) (allowing plaintiffs to post notices in defendant's Sheepshead

Bay restaurant to maximize opportunities for potential members to join); *Shibetti v. Z*

*Rest., Diner & Lounge, Inc.,* 478 F. Supp. 3d 403, 416 (E.D.N.Y. 2020) (allowing

plaintiffs to post notices in conspicuous locations such as the defendant's diner that

potential members would be working at); *Mangahas v. Eight Oranges Inc.,* 22-cv-4150

(LJL), 2024 U.S. Dist. LEXIS 98151, at *46-48 (S.D.N.Y. May 31, 2024) (approving of

plaintiff's proposed class notice to be posted in conspicuous locations in the restaurant).

Accordingly, this request is granted as it will likely lead to greater participation in the suit

for current workers. The request to include the notice in paychecks, however, is wholly

unsupported by Plaintiffs and is therefore denied.

> **f.   The Opt-In Date, Request 4: Authorizing an Opt-In Period of 90 days from Dissemination of the Notice, and the Notice Period of Three Years**

Plaintiffs first request that the opt-in anchor date be from the complaint's filing date or

the lawsuit filing date—here March 16, 2021.  (ECF No. 73 at 27.)

Opt-in periods are typically tolled from the day that their written consent to join is filed

with the Court.  *Perez v. La Abundancia Bakery & Rest. Inc*., 17-CV-0656 (RLM), 2017 U.S.

Dist. LEXIS 123550, at *22 (E.D.N.Y. Aug. 4, 2017).  However, Courts in this Circuit do

extend the notice period to instead begin from the filing of the Complaint when equitable

tolling issues could arise for potential opt-in plaintiffs, which occurs frequently.  *Lopes v. Heso,*

*Inc*., 16 CV 6796 (MKB)(RML), 2017 U.S. Dist. LEXIS 178709, at *15-16 (E.D.N.Y. Oct. 27,

2017) (granting plaintiffs request that the "look back period should be calculated from the

filing of the Complaint" since the equitable tolling issues are frequently raised in FLSA cases);

*Jackson v. ProAmpac LLC*, 7:22-CV-03120 (NSR), 2023 U.S. Dist. LEXIS 172080, at *26-39

(S.D.N.Y Sept. 25, 2023) (granting the plaintiffs request to "time the starting of opt-in

plaintiffs' claims - including those already filed - to the filing of the Complaint rather than to the filing of the consent to sue forms").  When plaintiffs provide proof that there are justifiable reasons why the look-back period should be extended, courts tend to grant the request that the opt-in date should be calculated from the Complaint's filing date.  *See e.g., Xing Ye v. 2953 Broadway Inc.,* No. 18 Civ. 04941, 2020 U.S. Dist. LEXIS 97866, at *10-11 (S.D.N.Y. June 3, 2020) (granting plaintiff's request to toll the limitations period from the date that plaintiff filed the initial certification until the date that the court approves the notice to potential class members and enters an order governing the noticing procedure because of the detours that the case had taken since the first plaintiff filed for conditional certification).

Given this case's protracted procedural history and "detours" since the Plaintiffs first filed their motion for conditional certification (Electronic Order dated Feb. 23, 2023), the Court finds that using the complaint's filing date, rather than the date of conditional certification, would be appropriate here to preserve the timeliness of the opt-in Plaintiffs' claims.

Plaintiffs next request that the opt-in period extend to 90 days to allow the greatest number of potential plaintiffs who wish to opt-in to the action.  (ECF No. 73 at 28.)  Plaintiffs cite delay due to foreign travel and COVID-19 as reasons for the extension.  (*Id.*)  Although similar requests for 90 day opt-in periods have been granted, it has only been when parties *are in agreement* that a 90-day opt-in period is appropriate or there are special circumstances shown by the plaintiff that require such an extended opt-in period.  *Chui v. Am. Yuexianggui of Li LLC*, CV 18-5091 (SJF) (AKT), 2020 U.S. Dist. LEXIS 117296, at *27-28 (E.D.N.Y. July 2, 2020).  Courts have denied requests for 90-day opt-in periods due to Covid-19 upheaval as concerns regarding international travel have been insufficient and generalized, instead, giving a 60-day opt-in period.  *See Carranza v. VBFS, Inc.*, No. 20-cv-02635 (PAE) (KHP), 2021 U.S.

Dist. LEXIS 64885, at *14-15 (S.D.N.Y. Apr. 2, 2021) ("To extend the notice period beyond

the typical 60-day timeframe, [p]laintiff needs to show the presence of special circumstances

warranting such an extension, not lack of harm or prejudice to [d]efendants."); *Jackson v.*

*ProAmpac LLC*, 694 F. Supp. 3d 352, 373 (S.D.N.Y. 2023) (denying plaintiff's request for an

extension to a 90 day opt-in period as a result of the upheaval caused by Covid-19 because the

plaintiff's argument was speculative and generalized, giving instead a 60 day opt-in period); *Ni*

*v. HSBC Bank USA, N.A.,* 23-cv-00309 (AS) (KHP), 2024 U.S. Dist. LEXIS 15216, at *24

(S.D.N.Y. 2024) (denying plaintiffs request for an extension to a 90 day opt-in period as they

failed to show the presence of special circumstances; therefore, the opt-in period was set for 60

days); *Sarikaputar v. Veratip Corp.,* 1:17-cv-00814 (ALC) (SDA), 2018 U.S. Dist. LEXIS

147244, at *20-21 (S.D.N.Y. Aug. 29, 2018) (denying plaintiff's request for a 90-day opt-in

period as it was found to be excessive, the court instead found a 60-day opt-in period to be

"consistent with FLSA practice" in the Circuit).

      Plaintiffs state that most coworkers in the affidavit "are foreign born and their right to

opt into the action and their right to opt into the action may be delayed by foreign travel, and

because of the COVID-19 public health crisis in the past two years."  (ECF No. 73 at 28.)  In

light of these reasons, and because the request is unopposed, the Court grants Plaintiffs'

request.  *Zheng Fang v. Yongjing Zhuang*, 10-CV-1290 (RRM) (JMA), 2010 U.S. Dist. LEXIS

133618, at *11 (E.D.N.Y. Dec. 1, 2010) ("[B]ecause plaintiff has indicated that members of the

prospective class are apt to travel often, and because courts have allowed more time to account

for this, I hereby authorize a ninety (90)-day opt-in period for this action."); *Ling Chen v. Asian*

*Terrace Rest., ,Inc*., 19-cv-7313 (BMC) , 2020 U.S. Dist. LEXIS 126417, at *14 (E.D.N.Y.

July 17, 2020) (finding plaintiff's request for a 90-day opt-in period to be reasonable where

plaintiff was concerned about potential opt-ins' delay due to foreign travel and COVID-19).

Finally, Plaintiffs request that the contents of the notice should provide for a three-year, not a two-year, statute of limitations for the willful violations of the FLSA here.  (ECF No. 73 at 28-29.)  At the conditional certification stage, "mere allegations of willful FLSA violations are sufficient to apply the three-year statute of limitations for purposes of sending a notice to putative members of a contemplated collective." *Carranza,* 2021 U.S. Dist. LEXIS 64885 at *13.  Here, Plaintiffs have established at least a preliminary showing that Defendants violated the FLSA by failing to pay their overtime wages and spread of hours' premiums.  (ECF No. 51.)  Given the present allegations and the conditional certification phase of the case, the Court grants this request.

### g.  Languages for the Notice of Pendency in Relevant Languages

Plaintiffs request that the language of the notice of pendency or social media posts be circulated in relevant languages, in particular, Chinese or Spanish here.  (ECF No. 73 at 29.)

Courts generally permit notices to be translated into the language of non-English speaking groups of potential plaintiffs.  *Yi Mei Ke v. JR Sushi 2 Inc.,* No. 19-CV-7332 (PAE) (BCM), 2021 U.S. Dist. LEXIS 8045, at *41 (S.D.N.Y. Jan. 15, 2021) ("Generally, courts permit notice to be translated into the mother tongue of non-English speaking groups of potential plaintiffs.") (internal citations omitted).  Such requests "increase the notice's effectiveness in informing potential opt-in plaintiffs [of the] action."  *Xhongle Chen v. Kicho Corp.*, No. 18 CV 7413 (PMH) (LMS), 2020 U.S. Dist. LEXIS 67935, at *26 (S.D.N.Y. Apr. 17, 2020).  However, there is a tendency to limit translations to specify which relevant languages the notices will be translated to rather

than stating that the notice will be translated to "all relevant languages." *Chengxue Sun v. New G Nails & Spa Inc.,* 22-CV-5523 (NRM) (ST), 2023 U.S. Dist. LEXIS 150449, at *18 (E.D.N.Y. Aug. 25, 2023) (allowing the notices to be disseminated in English and Mandarin Chinese since these were the relevant languages spoken by the defendants' employees); *Chen v. Dun Huang Corp,* 19-CV-11883 (GBD) (BCM), 2021 U.S. Dist. LEXIS 216989, at *30 (S.D.N.Y. Nov. 8, 2021) (allowing notices to be disseminated in both English and Chinese since plaintiffs attested "that many coworkers [we]re from Chinese-speaking countries and identify by their Chinese honorifics or nicknames"); *Singh v. Anmol Food Mart, Inc*., No 22-CV-5475 (RER) (JAM), 2024 U.S. Dist. LEXIS 14475, at *11 (E.D.N.Y. Jan. 26, 2024) (approving dissemination of the notice in both English and Hindi).

Here, it appears that the relevant languages are English, Chinese, and Spanish. (ECF No. 73 at 24, 29.)  Accordingly, the notices shall be distributed in those three languages.

### D.  Court-Authorized Reminder Notices

Plaintiffs request that the Court allow Plaintiffs to send reminders via mail, text, and email to unresponsive members halfway through the notice period.  (ECF No. 73 at 30.)

Courts have authorized plaintiffs to send reminder emails as under the FLSA, notices are "[i]ntended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in." *Yuefeng Shi v. TL & CG Inc.*, No. 19-CV-08502 (SN), 2020 U.S. Dist. LEXIS 142853, at *14-15 (S.D.N.Y. Aug. 10, 2020); *Qian Wang v. Kirin Transp. Inc*., 20-CV-5410 (KAM) (TAM), 2022 U.S. Dist. LEXIS 3599 (E.D.N.Y. Jan.

7, 2022) ("The Court authorizes Plaintiffs to send one reminder notice by mail and email prior to the expiration of the opt-in period in order to alert potential opt-in plaintiffs of the upcoming deadline."); *Lin v. JD Produce Maspeth LLC*, 20-CV-2746 (WFK) (TAM), 2021 U.S. Dist. LEXIS 214855 (S.D.N.Y. Nov. 5, 2021) (authorizing plaintiffs to "send a reminder mailing and email to all unresponsive collective actions members half-way through the notice period"). Thus, Plaintiffs' request is granted to allow for full participation of potential opt-in plaintiffs.

### E. Request 8: Ordering Plaintiffs to Publish the Notice of Pendency at Defendants' Expense on Social Media and in Newspapers

Plaintiffs next request that Defendants be directed to publish the Notice of Pendency in both Chinese and English in newspapers if the Defendants fail to furnish contact information of the collective or more than 20% of the Notices are undeliverable. (ECF No. 73 at 30.)

Courts in this Circuit have allowed plaintiffs to publish Notice of Pendency at defendant's expense in newspapers if defendant fails to furnish contact information as ordered by the court or more than 20% of mailed Notices be returned as undeliverable. *Sarikaputar v. Veratip Corp.,* 1:17-cv-00814 (ALC) (SDA), 2018 U.S. Dist. LEXIS 147244, at *22-23 (S.D.N.Y. Aug. 29, 2018) (holding that if defendant fail to furnish contact information as ordered by the court or more than 20% of mailed Notices be returned as undeliverable, then plaintiff may publish the Notice of Pendency at defendants' expense in English, Spanish, Thai and Lao language newspapers).

However, frequently the request for publication following failure to furnish contact information or lack of delivery of notices has been denied because there is no reason to believe that defendants would not produce it or there being no basis of law for

22

this request.  *See Qian Xiong Lin v. DJ's Int'l Buffet,* CV 17-4994 (JS)(AYS), 2019 U.S. Dist. LEXIS 193947 (E.D.N.Y. Nov. 7, 2019) (denying plaintiffs request to allow plaintiffs to "publish the proposed notice of pendency on social media, at Defendants' expense, if more than twenty percent of the notices sent are returned as undeliverable" as plaintiffs provided no basis in law for this request and the court found nonapplicable); *Lijun Geng v. Shu Han Ju Rest. II Corp.*, 18-cv-12220 (PAE) (RWL), 2019 U.S. Dist. LEXIS 154246, at *61 (S.D.N.Y. Sept. 6, 2019) (denying plaintiffs request to "order newspaper and social media publication at defendants' expense should Defendants fail to furnish adequate contact information or should more than 20 percent of mailed notices be returned as undeliverable" as the request was premature since defendants had not had the opportunity to produce contact information and there was no reason to believe that they would not produce it).

Here, Plaintiffs have not cited any reason or justification to show the likelihood that Defendants would not fulfill their obligations.  Nor have Plaintiffs cited any cases as support for this request.  (ECF No. 73 at 30.)  Accordingly, this request is denied.

### F.  Request 9: Ordering Equitable Tolling of the Status of Limitations for 90 days Until the Expiration of the Opt-in Period

*Finally*, Plaintiffs request that the equitable tolling doctrine apply to protect the Plaintiffs.  (ECF No. 73 at 31.)  Specifically, they request the statute of limitations for opt-ins be tolled from the date Plaintiffs filed the original complaint through the end date of the opt-in period.  (*Id.*)  Since the statute of limitations will continue to run until the potential class member opts in which provides a hasty period for Plaintiffs to identify and provide the notice to those members, the Plaintiffs request the tolling of the period.  (*Id.* at 32.)

"Equitable tolling is appropriate only in rare and exceptional circumstances . . . where a

23

plaintiff has been prevented in some extraordinary way from exercising his rights." *Carranza v. VBFS, Inc*., No. 20-cv-02635 (PAE) (KHP), 2021 U.S. Dist. LEXIS 64885, at *15-16 (S.D.N.Y. Apr. 2, 2021) (denying without prejudice plaintiff's request to toll the limitations period where plaintiff failed to demonstrate exceptional circumstances but plaintiff still had the right to resubmit the request once additional discovery or relevant facts arose for another tolling application) (quoting *Andon v. SDG Props.,* No. 17-cv-7876 (ALC) (KHP), 2018 U.S. Dist. LEXIS 140913 at *3 (S.D.N.Y. Aug. 20, 2018) (citation and internal quotation omitted); *Singh*, 2024 U.S. Dist. LEXIS 14475 at *8-9 (finding that plaintiff did not allege extraordinary circumstances for tolling but left open the request for eligible future plaintiffs in the future). Equitable tolling is appropriate where it is necessary to avoid prejudice to potential opt-in plaintiffs, especially when it is due to uncontrollable delays in procedural process. *See Beda v. Nurtury at Flandreau, Inc.,* 22-cv-4827-NSR-VR, 2024 U.S. Dist. LEXIS 94411, *20-23 (S.D.N.Y. May 28, 2024) (granting plaintiff's request to grant equitable tolling to avoid prejudice to potential opt-in plaintiffs due to delays caused by defendants and the Court); *Yahraes v. Rest. Assocs. Events Corp.,* 10-CV-935 (SLT), 2011 U.S. Dist. LEXIS 23115, at *5-9 (E.D.N.Y. Mar. 8, 2011) (finding that equitable tolling was warranted from the date that plaintiffs were served their original certification motion due to the delays in the procedural process that had prevented plaintiffs from delivering Notice to potential opt-in plaintiffs).

Here, given the long procedural history of this case, the Court finds tolling of the statute of limitations for only 90 days until the opt-in period expires warranted.  Specifically, as Plaintiffs point out, Plaintiffs filed their Complaint on March 16, 2021 (ECF No. 1) and Plaintiffs first filed their motion to certify the FLSA collective on August 3, 2022 (ECF No. 39).  Defendants stipulated to a number of issues in Plaintiffs' initial motion to certify.  (ECF

24

No. 46.)  The Court subsequently denied the motion to certify in light of the then-pending motion to amend.  (Electronic Order dated Feb. 23, 2023.)  Upon Judge Brodie's adoption of the motion to amend (ECF No. 66), Plaintiffs re-filed their motion to certify (ECF No. 71), to which Defendants filed no opposition.  These circumstances represent nearly two years of Plaintiffs waiting to file and obtain a resolution on their motion to certify the FLSA collective. Accordingly, this request is granted.  *Beda,* 2024 U.S. Dist. LEXIS 94411 at *21 ("Here, equitable tolling is warranted to avoid prejudice to potential opt-in plaintiffs resulting from delays caused by Defendants and the Court."); *Yahraes v. Rest. Assocs. Events Corp.*, 10-CV-935 (SLT), 2011 U.S. Dist. LEXIS 23115, at *9 (E.D.N.Y. Mar. 8, 2011) ("This procedural history demonstrates that plaintiffs have vigorously pursued their claims and, through no fault of their own, have been delayed in prosecuting their action and distributing 216(b) notice to potential opt-in plaintiffs.").

## II.    Discovery

In light of the Court's granting Plaintiffs' request to conditionally certify the FLSA collective, the Court likewise addresses the status of discovery in this matter.  The Court recently reopened discovery for the limited purpose of allowing Defendants to respond to Plaintiffs' outstanding discovery requests.  (*See* Electronic Order dated July 1, 2024.)  The parties are directed to file on or before August 23, 2024, a joint letter outlining the status of discovery and what further discovery, if any, is needed, along with  a proposed discovery schedule.

## <u>CONCLUSION</u>

For the foregoing reasons, the motion to conditionally certify this action as an FLSA collective (ECF No. 71) is GRANTED in part and DENIED in part as follows:

25

**GRANTED** as to
- Collective action status under the FLSA (Request 1),
- Ordering Defendants to produce an Excel sheet with the required information within fourteen (14) days of the entry of this Order (Request 2),
- Authorizing a 90-day opt-in period from date of dissemination and translation (Request 4),
- Tolling the Statute of Limitations Period for 90 days until the opt-in period expires (Request 9)
- Sending Reminder Notices to potential plaintiffs halfway through the opt-in period.

**DENIED** as to
- Posting the notice on Plaintiffs' counsel's website (Request 5)
- Ordering Plaintiffs to publish the Notice at Defendants' expense on social media and in the newspaper (Request 8)

**GRANTED IN PART AND DENIED IN PART** as to the dissemination of the notice within twenty-one (21) days after receipt of the Excel sheet and affidavit of completion (Request 3). Specifically, Plaintiffs may disseminate the notices in Chinese, English, and Spanish via mail, email, text message, and social media groups (WeChat and WhatsApp) (Request 6) *but not u*sing QR codes *or* Defendants' Logo.  Plaintiffs may also post the notice in conspicuous locations in Defendants' workplace throughout the opt-in period, but not in pay envelopes or via another method of delivery of their paycheck information. (Request 7)

The parties are directed to file on or before **August 23, 2024**, a joint letter outlining the

status of discovery and what further discovery, if any, is needed, along with  a proposed

discovery schedule.

Dated:	Central Islip, New York
	August 9, 2024

SO ORDERED:

/S/ <em>James M. Wicks</em>

JAMES M. WICKS<br>United States Magistrate Judge